**Lauren F. Blaesing, OSB #113305**
LaurenBlaesing@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Alexandra L. Rhee, OSB #230770**
AlexRhee@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085
*Special Assistant Attorneys General for State Defendants*
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| Shannon Conley, Conservator for Z.C., a minor,<br><br>          Plaintiff,<br><br>  v.<br><br>Kim Chapman, Anastasia Brooks, Kassidy O'Brien, Erin Lane, Margaret Ramirez, in their individual capacities,<br><br>          Defendants. | Case No. 6:23-CV-01353-MK<br><br>**STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL UNDER FRE 502(a)** |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................1

ARGUMENT .......................................................................................................................5

    I.    The disclosure of the full Duncan-Raygosa certification file (without attorney-client privileged communications redacted) was inadvertent, not intentional, and thus cannot be the basis of a subject matter waiver. ......................6

    II.    A subject matter waiver is not warranted because State Defendants did not engage in a selective and misleading disclosure......................................................8

        A.    Fairness does not require disclosure of additional and different, privileged communications, because ODHS disclosed the entire Duncan-Raygosa certification file outside of litigation. ............................8

        B.    Plaintiff has not demonstrated that State Defendants have engaged in a selective disclosure of privileged material.........................................11

            1.    The fact that different productions in different cases had "different bates labels" is not proof of anything nefarious. ...........12

            2.    State Defendants appropriately redacted the documents identified by plaintiff. ..................................................................13

    III.    A subject matter waiver is not warranted because many of the documents identified by plaintiff were not covered by the attorney-client privilege. .............16

    IV.    Plaintiff's description of the "subject matter" at issue in the disclosed communications is far too broad.........................................................................18

    V.    The Skjelset declaration does not justify any broader subject matter waiver.....................................................................................................................20

CONCLUSION...................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

Cases

*Bittaker v. Woodford*,
  331 F.3d 715 (9th Cir. 2003.) ................................................... 9

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1156 (9th Cir. 1992) ...................................... 1, 11, 18

*Gateway Deliveries, LLC v. Mattress Liquidators, Inc.*,
  No. 2:14-CV-02033 JWS, 2016 WL 232427 (D. Ariz. Jan. 20, 2016).................... 8

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) .............................................. 19, 21

*K.F. v. Baker Sch. Dist. 5J*,
  No. 2:20-cv -00693-IM, 2021 WL 863198 (D. Or. Mar. 8, 2021) ......................... 10

*Meyer v. State by & through Oregon Lottery*,
  292 Or. App. 647, 426 P.3d 89 (2018)..................................... 17

*Murthy v. Missouri*,
  144 S. Ct. 1972 (2024)...................................................... 12

*Orthopaedic Hosp. v. DJO Glob.*, Inc.,
  No. 319CV00970JLSAHG, 2020 WL 5363307 (S.D. Cal. Sept. 8, 2020)................ 8

*S.E.C. v. Roberts*,
  254 F.R.D. 371 (N.D. Cal. 2008)........................................... 11

*STM Atl. N.V. v. Dong Yin Dev. (Holdings) Ltd.*,
  *No. 218CV01269JLSJCG*, 2018 WL 6265089 (C.D. Cal. June 8, 2018) .................. 9

*Swan v. Miss Beau Monde, Inc.*,
  566 F. Supp. 3d 1048 (D. Or. 2021) ..................................... 9

*United States v. ChevronTexaco Corp.*,
  241 F. Supp. 2d 1065 (N.D. Cal. 2002) .............................. 16, 20

*United States v. Richey*,
  632 F.3d 559 (9th Cir. 2011) ............................................. 16

*United States v. Sanmina Corp.*,
  968 F.3d 1107 (9th Cir. 2020) ............................... 11, 12, 17, 21

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) .................................................................................. 15

*Verinata Health, Inc. v. Sequenom, Inc.*, No. C,
    12-00865 SI, 2014 WL 4076319 (N.D. Cal. Aug. 18, 2014) .................................... 9

*Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*,
    647 F.2d 18 (9th Cir. 1981) ........................................................................ 7

*Wi-LAN, Inc. v. LG Elecs., Inc.*,
    No. C 10-80254 JF (PSG), 2013 WL 685339 (N.D. Cal. Feb. 25, 2013) .................... 9

Statutes

ORS 409.255 ........................................................................................... 3, 7

Rules

Fed. R. Evid. 502 ........................................................................ 5, 6, 8, 10, 11, 17

Fed. R. Evid. 502(a) ........................................................................ 5, 6, 7, 8, 13

Fed. R. Evid. 502(a)(3) .................................................................................. 8, 9

Fed. R. Evid. 502(b) ..................................................................................... 6, 7, 8

Fed. R. Evid. 502(c) ................................................................................. 5, 16, 17

Fed. R. Evid. 502(d) ........................................................................................ 13

OEC 511 ......................................................................................................... 17

ORPC 4.4(b) ................................................................................................... 14

Other Authorities

Christopher B. Mueller & Laird C. Kirkpatrick, 2 Federal Evidence § 5:34 (4th ed. 2023) ...... 7, 8

## INTRODUCTION

Privileged communication is one of the vital components in the relationship between a client and their advocate.  Citing a handful of documents disclosed in a different proceeding three years ago, plaintiff demands that this Court force State Defendants to disclose attorney-client privileged communications regarding nearly every fact at issue in this case.  This Court should deny the motion for four independent reasons.  First, Oregon Department of Human Services' ("ODHS") disclosure in the 2021 probate matter was inadvertent, not intentional, and thus does not justify a broader waiver now.  Second, State Defendants disclosed the entire Duncan-Raygosa certification file in response to a pre-suit subpoena in the 2021 probate matter, and there is no evidence of selective disclosure designed to create an unfair advantage in this litigation.  Third, contrary to plaintiff's motion, not all of the communications identified by plaintiff were attorney-client privileged; some merely copied an attorney on factual information and others were work product.  Finally, plaintiff proposes aggressively expanding the concept of "waiver" far beyond what the law and the Federal Rules of Evidence support.  Subject matter waiver extends only to the legal advice "actually disclosed" in the communication not "general" case topics and themes.  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). For these reasons, this Court should reject plaintiff's demand for a broad subject matter waiver.

## BACKGROUND

Plaintiff Conley's attack on State Defendants' attorney-client relationship originates with pre-litigation probate discovery initiated by Ethan Levi, the conservator for Z.C.'s sister, J.C. The Probate Department of the Lane County Circuit Court appointed Levi as conservator in May 2021, for the purposes of investigating J.C.'s potential civil claims against State Defendants. Levi then issued a subpoena to ODHS seeking eight categories of documents, including the "complete foster care certification file" for the Duncan-Raygosa home.  (5/24/21 Subpoena

Duces Tecum, attached to Decl. of Mary Skjelset in Supp. of Pl.'s Mot. to Compel Under FRE

502(a) as Ex. 1 ("Skjelset Decl.").)  ODHS produced over 1,700 pages of documents in response

to Levi's subpoenas in the probate matter.

   The certification file contained within it eight email threads that included Assistant

Attorneys General ("AAG") at the Oregon Department of Justice ("ODOJ") as senders or

recipients.  (Decl. of Manuella Tshala in Supp. of Pl.'s Mot. to Compel Under FRE 502(a) Ex. 4

("Tshala Decl.").)  Below is a description of the attorney emails included in the certification file,

with the communications that State Defendants believe to be attorney-client privileged

italicized.[1]

- A June 2017 exchange between numerous caseworkers, copying AAG Tricia Gonzalez and discussing efforts to interview Joseph Raygosa about Z.C. running away from the foster home.  AAG Gonzalez is not involved in the discussion other than being copied.[2]

- An October 2017 email exchange between numerous caseworks and a different ODOJ AAG, Anna Spickerman, regarding J.C.'s recent disclosure of sexual abuse.  Ms. Spickerman responds to the disclosure with concern but does not provide legal advice.[3]

- A June 2018 email exchange in which AAG Spickerman responds to paralegal Bethani Rivera's update regarding the status of the administrative appeal of the Duncan-Raygosa home's certification revocation.  *AAG Spickerman responds by noting that the certification lapsed by operation of law when the family moved.*[4]

- A November 2017 email exchange between ODHS caseworkers and *AAG Spickerman drafting and revising the notice of revocation for the Duncan-Raygosa home.*[5]

---

[1] For reasons discussed below, some of the other emails were work product, but not attorney-client privileged.

[2] Tshala Decl. Ex. 4 at 1-5.

[3] Tshala Decl. Ex. 4 at 6-7.

[4] Tshala Decl. Ex. 4 at 8-9.

[5] Tshala Decl. Ex. 4 at 10-11.

**Page 2 –    STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL UNDER FRE 502(a)**

- Two July 2017 email exchanges between ODHS caseworkers and *AAG Spickerman providing legal advice regarding a potential voluntary termination of certification by the Duncan-Raygosa home.*[6]

- An October 2017 email exchange between attorneys and caseworkers in which a caseworker relays J.C.'s recent disclosure of sexual abuse. AAG Spickerman comments with concern regarding the disclosure and AAG Gonzalez requests and receives a report summarizing J.C.'s forensic interview with Kids FIRST.[7]

- A July 2017 email exchange between caseworkers and *AAG Gonzalez regarding the facts necessary to support a "founded" disposition for abuse or neglect for the Duncan-Raygosa home due to Z.C. running away from the home.*[8]

Counsel for ODHS and probate counsel for Levi conferred on various matters in connection with the ODHS subpoena response but never discussed attorney-client privilege, and ODHS did not intend to waive privilege by producing the attorney-client communications described above. (Skjelset Decl. Ex. 2 at 1, 7-10.) In the probate matter, ODHS and Levi discussed protecting the information in the files that is both highly sensitive personal information and confidential pursuant to ORS 409.255. (*Id.*) ORS 409.255 protects the privacy of "information about an individual child, family or other recipient of [child protective] services." ORS 409.255. Consistent with those discussions, ODHS reviewed the documents for confidential information pertaining to individual children and families. But ODHS did not review the certification file for attorney-client privilege and inadvertently produced the attorney-client privileged emails described above as part of its larger production of documents in the probate matter. (Skjelset Decl. Ex. 2 at 1, 7-10.)

In November 2022, Levi as conservator for J.C. filed suit against State Defendants. In September 2023, plaintiff as conservator for J.C.'s brother, Z.C., filed this lawsuit. Neither

---

[6] Tshala Decl. Ex. 4 at 12-14.

[7] Tshala Decl. Ex. 4 at 15-17.

[8] Tshala Decl. Ex. 4 at 18-21.

Page 3 –     STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL UNDER FRE 502(a)

plaintiff requested consolidation and each plaintiff served their own, unique discovery requests

on State Defendants.  State Defendants, represented by the undersigned counsel, collected and

reviewed tens of thousands of documents to respond to plaintiff's requests for production.

(Hoffman Decl. ¶ 3.)  Those documents included the same Duncan-Raygosa certification file that

ODHS previously produced years earlier in the probate matter.  As part of the document review

process in the *Levi* and *Conley* litigation, State Defendants reviewed documents for privilege and

redacted or withheld privileged communications.  In January 2024, three years after ODHS's

probate court production, counsel for Levi sent counsel for State Defendants a letter noting that

certain documents had previously been disclosed in full in the probate proceeding but had been

redacted for privilege in the *Levi* litigation.  In February 2024, counsel for State Defendants

responded by agreeing that some of the privileged documents had been "previously produced . . .

in the probate matter" and that State Defendants would no longer assert privilege over *those*

specific documents to maintain "consistency" with the earlier production in the probate matter.

(Skjelset Decl. Ex. 6.)

       State Defendants' February 2024 letter did not recognize any privilege waiver except as

to the limited, individual documents, nor did State Defendants state or imply that ODHS

intended to waive privilege three years earlier when ODHS inadvertently produced unredacted

attorney-client communications.  (*Id.*)  Levi did not assert any broad subject matter waiver with

respect to *other* undisclosed documents.  Levi never moved to compel any additional,

undisclosed privileged documents on the basis of subject matter waiver.  The discovery deadlines

in the *Levi* and *Conley* matters have now passed.  Last month, when plaintiff raised the probate

disclosures in this matter, State Defendants explained to plaintiff and this Court that ODHS

inadvertently produced a small set of "privileged documents" in 2021 and did not claw back the

documents in this litigation given that "two years" had elapsed since ODHS's production in the probate matter. (Tshala Decl. Ex. 2.) State Defendants provided a similar explanation last month when plaintiff re-raised the issue. (Tshala Decl. Ex. 3.)

Plaintiff then filed this motion, which attaches as Exhibit 4 the attorney-client communications described above. Plaintiff insists that the eight documents described above entitle plaintiff to discover *all* privileged communications covering each of plaintiff's case themes, including "concerns" about the Duncan-Raygosa home, "concerns" about the Spicer-McCool home, and caseworker Kassidy O'Brien's "bias." (Tshala Decl. Ex. 1.) Attached to plaintiff's motion are two declarations, one from plaintiff's counsel and one from Levi's counsel. Those declarations attach over 200 pages of documents, culled out of the close to 90,000 pages ODHS produced to plaintiff in this matter and combined in various compilation exhibits created by counsel. Plaintiff's motion does not provide factual analysis tying the contents of counsels' exhibits to their legal arguments. Plaintiff simply asserts that the documents are proof that State Defendants' use of the privilege has been "inconsistent, selective, and misleading."

## ARGUMENT

Federal Rule of Evidence 502 furnishes the framework for analyzing waiver. Read contextually, as a whole, it is clear that Rule 502 does not favor indiscriminate waiver, much less on the unfettered scale plaintiff demands here. Fed. R. Evid. 502. FRE 502(c) provides that a disclosure made in a state proceeding does not operate as a waiver in a federal proceeding if the disclosure would not be a waiver if "made in a federal proceeding" or "under the law of the state where the disclosure occurred." Fed. R. Evid. 502(c). FRE 502(a) states that a prior disclosure of privileged material in a federal proceeding waives the privilege for additional, undisclosed material only if the prior waiver is "intentional," "fairness" requires considering the disclosed and undisclosed material together, and the disclosed and undisclosed material concerns the same

"subject matter." Fed. R. Evid. 502(a). Under Rule 502, this Court should deny plaintiff's motion. Three years ago, ODHS produced the entire Duncan-Raygosa certification file in response to a subpoena in a separate probate matter. The unfortunate inclusion of eight privileged emails in that production was inadvertent, not intentional, and fairness does not demand a broader disclosure now. The attorney-client communications disclosed in the probate proceeding address narrow issues of minimal relevance to this case.[9] This Court should deny the motion.

I.     **The disclosure of the full Duncan-Raygosa certification file (without attorney-client privileged communications redacted) was inadvertent, not intentional, and thus cannot be the basis of a subject matter waiver.**

As a threshold matter, plaintiff's motion fails because any disclosure of privileged materials was inadvertent, not intentional. FRE 502(b) provides that the inadvertent disclosure of a document waives privilege for that document if the disclosing party failed to take "reasonable steps" to prevent and rectify the inadvertent disclosure. Fed. R. Evid. 502(b). By contrast, FRE 502(a) states that only "intentional" disclosures can be the basis for a subject matter waiver without mentioning "reasonable steps" taken to prevent and rectify the error. Read together, these provisions mean that if a party unintentionally discloses a privileged document and does not take "reasonable steps" to prevent and rectify the error, the party waives the privilege as to *that document*, but not any *additional* documents regarding the same subject matter. Fed. R. Evid. 502(a), (b).

As the leading treatise in this area explains:

> If inadvertent disclosure is the result of lack of reasonable care and hence is a basis for denying privilege protection *for the disclosed document*, the question arises whether such waiver extends to any

---

[9] The eight emails concern at most seven topics, although as a practical matter, half concern the revocation of the Duncan-Raygosa's certification, the fact of which is undisputed.

**Page 6 –     STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL UNDER FRE 502(a)**

other privileged documents relating to the same subject matter.
Rule 502(a) clearly provides that it does not.

(Christopher B. Mueller & Laird C. Kirkpatrick, 2 Federal Evidence § 5:34 (4th ed. 2023) (emphasis added).)

Here, State Defendants' disclosure in the probate matter was unintentional.  When responding to a subpoena, ODHS produced the entire Duncan-Raygosa certification file without conducting a privilege review.  ODHS never intended to waive privilege with respect to any attorney-client communications in the file.  The parties' discussions regarding redactions focused entirely on ORS 409.255, not attorney-client privilege.  (Skjelset Decl. Ex. 2.)  When the undersigned counsel reviewed the same documents in the context of this litigation, counsel marked those documents privileged and work product.  (*Id.* Ex. 6.)  But upon learning of the prior disclosure in the probate proceeding, State Defendants did not litigate whether ODHS took "reasonable steps" to prevent or rectify the disclosure and instead agreed that the content of those specific documents was waived due to the passage of time.  (*Id.* Ex. 6.)

In other words, State Defendants agreed that under FRE 502(b) they could not claw back the disclosed documents because they did not take reasonable steps to protect the disclosure at the outset, but under FRE 502(a) the disclosure was inadvertent and therefore not the basis for a broader subject matter waiver.  State Defendants re-stated this position to the Court at the July 10 and August 6 status conferences.  (Tshala Decl. Exs. 2, 3.)

Plaintiff incorrectly applies 502(b) and cites various cases for the proposition that State Defendants did not take "reasonable" efforts to claw back the disclosed documents.  (Mot. to Compel at 7.)[10]  Plaintiff misses the point, which is that 502(a) governs the scope of subject

---

[10] Plaintiff does cite a 1981 Ninth Circuit case for the proposition that subject matter waiver applies to an inadvertent disclosure.  *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647

matter waiver.  As Professors Mueller and Kirkpatrick explain, Rule 502(a) "clearly . . . does not" provide for subject matter waiver even where an inadvertent disclosure results from "lack of reasonable care" within the meaning of Rule 502(b).  (Christopher B. Mueller & Laird C. Kirkpatrick, 2 Federal Evidence § 5:34 (4th ed. 2023).)

It is true that State Defendants' "lack of reasonable care" may mean that State Defendants cannot now claw back the *previously disclosed* documents.  But State Defendants do not seek to claw back those documents.  Because the previous disclosure was unintentional, there is no basis for a broader subject matter waiver with respect to *additional* documents.  For this reason alone, this Court should deny the motion.

## II.    A subject matter waiver is not warranted because State Defendants did not engage in a selective and misleading disclosure.

### A.    Fairness does not require disclosure of additional and different, privileged communications, because ODHS disclosed the entire Duncan-Raygosa certification file outside of litigation.

Plaintiff's waiver argument relies on a belief that an eight-document error three years ago, together with inconsistencies across two high-volume, complex productions, are deliberate attempts to game privilege, warranting the loss of State Defendants' right to privileged communication with its counsel concerning all of the matters at issue in this litigation.  That is neither legally supportable nor practically plausible.

"Fairness" does not require a broader waiver and there are no grounds for the Court to grant plaintiff's motion on that basis.  FRE 502(a)(3) provides that a waiver in a federal proceeding extends to undisclosed communication or information only if the disclosed and

_____

F.2d 18, 25 (9th Cir. 1981).  But *Weil* predates FRE 502 and courts in the Ninth Circuit recognize that Congress's 2008 adoption of FRE 502 abrogated *Weil*.  *See Orthopaedic Hosp. v. DJO Glob., Inc.*, No. 319CV00970JLSAHG, 2020 WL 5363307, at *8 (S.D. Cal. Sept. 8, 2020) (citing *Gateway Deliveries, LLC v. Mattress Liquidators, Inc.*, No. 2:14-CV-02033 JWS, 2016 WL 232427, at *2 (D. Ariz. Jan. 20, 2016)).

Page 8 –    **STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL UNDER FRE 502(a)**

undisclosed material "ought in fairness to be considered together."  Fed. R. Evid. 502(a)(3).

Under FRE 502(a)(3), a subject matter waiver is "reserved for those unusual situations in which

fairness requires a further disclosure of related, protected information, in order to prevent a

selective and misleading presentation of evidence to the disadvantage of the adversary."  Fed. R.

Evid. 502(a)(3) Explanatory Note.; *STM Atl. N.V. v. Dong Yin Dev. (Holdings) Ltd. No.*

*218CV01269JLSJCG*, 2018 WL 6265089, at *10 (C.D. Cal. June 8, 2018) (quoting *Verinata*

*Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4076319, at *3 (N.D. Cal. Aug. 18,

2014)) (same); *see also Bittaker v. Woodford*, 331 F.3d 715, 720 n.5 (9th Cir. 2003.) ("[W]here

... disclosures of privileged information are made extrajudicially and without prejudice to the

opposing party, there exists no reason in logic or equity to broaden the waiver beyond those

matters actually revealed.").

Unfair litigation conduct generally occurs when a litigant selectively uses attorney-client

privileged materials in the litigation as a sword while simultaneously trying to shield discovery

regarding those same materials.  *See*, *e.g.*, *Swan v. Miss Beau Monde, Inc.*, 566 F. Supp. 3d 1048,

1058 (D. Or. 2021) ("[F]airness considerations arise when the party attempts to use the privilege

both as a shield and a sword.  In other words, a party cannot partially disclose privileged

communications or affirmatively rely on privileged communications to support its claim or

defense and then shield the underlying communications from scrutiny by the opposing party.")

(citations omitted); *STM*, 2018 WL 6265089, at *10 ("Because Plaintiffs have not identified any

selective disclosure by [the intervenor] resulting in unfair prejudice, this is not the unusual

situation in which fairness requires further disclosure.") (citation omitted); *Wi-LAN, Inc. v. LG*

*Elecs., Inc.*, No. C 10-80254 JF (PSG), 2013 WL 685339, at *4 (N.D. Cal. Feb. 25, 2013) ("The

[disclosed document] is an extrajudicial disclosure which [the plaintiff] states it has never used

[ ] during the underlying action. . . . Under these circumstances, the court is not persuaded that [the defendant] is legally prejudiced.").  As the advisory committee notes explain, "subject matter waiver is limited to situations in which a party intentionally puts protected information *into the litigation* in a selective, misleading and unfair manner."  Fed. R. Evid. 502 Explanatory Note (emphasis added).

Here, State Defendants did not engage in a "selective and misleading" presentation of evidence in this litigation.  ODHS responded to a subpoena that asked for the entire Duncan-Raygosa certification file.  (Skjelset Decl. Ex. 1.)  ODHS then provided the entire file without reviewing the file for privilege.  ODHS did not withhold or redact some emails from the certification file while producing others.  Further, the disclosure did not occur in litigation; trial counsel defending against Conley and Levi's federal claims was not involved in the probate production at issue, which was handled entirely by other counsel and representatives of ODHS.

Most important for applying the fairness analysis, State Defendants have not used the attorney-client communications at issue in the disclosure as a "sword" in this litigation.  Indeed, the legal advice disclosed in the probate production has minimal relevance to this litigation.  For instance, one group of privileged emails merely discusses the drafting of the formal revocation notice for the Duncan-Raygosa household.  Another privileged communication discusses the status of the Duncan-Raygosa house's administrative appeal of certificate revocation and related records requests.  Plaintiff does not explain how these mundane discussions of undisputed administrative facts are relevant to State Defendants' defenses, much less offer any argument that State Defendants are affirmatively using the disclosed legal advice in this litigation.  *K.F. v. Baker Sch. Dist. 5J*, No. 2:20-cv -00693-IM, 2021 WL 863198, at *4 (D. Or. Mar. 8, 2021) (denying motion to compel where plaintiff failed to identify unfairness and defendant did not

"rely in any part on the requested materials in this litigation").[11]  In sum, disclosure of privileged emails in the certification file was a good-faith error made outside the scope of this litigation.  A disclosure by mistake—that the undersigned counsel was not aware of until counsel for Levi raised it in context of the privilege log—is neither "selective" nor strategic, nor has plaintiff attempted to show how State Defendants have or even could use the inadvertently produced documents strategically.

**B.    Plaintiff has not demonstrated that State Defendants have engaged in a selective disclosure of privileged material.**

Plaintiff effectively makes no argument concerning the actual content of any privileged communication or disputed fact to support a "fairness" basis for waiver.  Instead, plaintiff attaches over 200 pages of documents to her motion, spread across two declarations and a few dozen compilation exhibits, and then asserts without elaboration or factual discussion those exhibits are proof that State Defendants are being "misleading" and "inconsistent" in their treatment of privilege.  (Mot. to Compel at 9.)

Plaintiff acknowledges Rule 502 does not permit a "blanket" waiver of privilege.  (*Id.* at 7.)  Instead, waiver "must be closely tailored to the needs of the opposing party and limited to what is necessary to rectify any unfair advantage."  *United States v. Sanmina Corp.*, 968 F.3d 1107, 1124 (9th Cir. 2020) (cleaned up); *Chevron,* 974 F.2d at 1162 ("Pennzoil was not required, as a result of the limited disclosure, to provide Chevron with every document or communication that touched on the more general tax deferral question."); *see also S.E.C. v. Roberts*, 254 F.R.D. 371, 378 (N.D. Cal. 2008) ("There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of

---

[11] To be clear, ODHS caseworkers' deliberations and decisions regarding the revocation are not privileged, to the extent they do not involve attorneys or legal advice.

the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.").

Simply attaching documents to a motion without explaining their legal and factual relationship to the motion, or the very significant legal decision plaintiff asks this Court to undertake, is not argument.  Plaintiff has failed to even lay out the factual predicate for unfairness, much less establish it by explaining the relationship between the documents disclosed in the probate subpoena, or explain the relationship between those documents and the hundreds of pages of discovery materials attached to plaintiff's motion, and plaintiff's claim for relief.  *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1124 (9th Cir. 2020) (rejecting broad waiver where it was "not clear what unfair advantage [disclosing party] has gained from its conduct, or how the [opposing party] has been unfairly disadvantaged"); *see generally Murthy v. Missouri*, 144 S. Ct. 1972, 1991 n.7 (2024) ("Judges are not like pigs, hunting for truffles buried in the record.") (cleaned up).

> ### 1.    The fact that different productions in different cases had "different bates labels" is not proof of anything nefarious.

Nothing in plaintiff's motion or exhibits substantiates plaintiff's accusations that State Defendants have acted improperly.  Plaintiff suggests using "different bates labels" and different "volume[s]" for the productions in the *Levi* and *Conley* matters is proof that State Defendants' privilege designations have been "inconsistent and inaccurate."  (Mot. to Compel at 4.)  Plaintiff is mistaken.  Plaintiff did not ask to consolidate the *Levi* and *Conley* matters, and plaintiffs in each of those cases served different requests for production at different times.  Contrary to plaintiff's accusations, it is unsurprising and unremarkable that different productions in different cases have "different bates labels" and different "volume[s]."

     **2.**       **State Defendants appropriately redacted the documents identified by plaintiff.**

Plaintiff also identifies five documents that State Defendants produced with redactions in this litigation. These documents are attached as Exhibits 5-9 of the Tshala declaration (the "Litigation Exhibits"). The Litigation Exhibits are completely unrelated to the documents disclosed in the probate matter, which underlie plaintiff's waiver argument. As plaintiff did not confer with State Defendants about these privilege designations, it is not clear what relevance these documents have to plaintiff's motion.[12] Plaintiff cannot explain why "in fairness" the attorney-client communications disclosed in the probate matter should be "considered together" with the Litigation Exhibits. *See* Fed. R. Evid. 502(a). The Litigation Exhibits concern Z.C.'s time in the Spicer-McCool home whereas the probate documents came from the Duncan-Raygosa certification file and concern Z.C.'s time in the Duncan-Raygosa home a year earlier. There is no practical or legal connection between these two sets of documents for the purposes of plaintiff's motion.

Plaintiff observes that the Litigation Exhibits appear in various places in State Defendants' document production and sometimes lack redactions. Again, this is unsurprising and unremarkable. State Defendants have collected 121,797 documents from 22 custodians and produced 87,940 pages of material. (Hoffman Decl. ¶ 3.) Inadvertent disclosure of privileged material is a well-known aspect of modern, large-scale document discovery. In recognition of this fact, and consistent with FRE 502(d), this Court issued a protective order that provided for

---

[12] Plaintiff does not contest the appropriateness of the privilege designations in the Litigation Exhibits or argue that State Defendants waived privilege with respect to the Litigation Exhibits. Nor could she. Even had plaintiff met the conferral requirement, the terms of the protective order do not permit such a waiver. Plaintiff only moves to compel a broader waiver as described in Table 1 to the Tshala declaration. None of the Litigation Exhibits appear in Table 1.

claw back of any privileged documents produced in discovery.  As this Court explained, "A large volume of documents may be exchanged through discovery in this lawsuit, and the parties want to expedite the review and delivery of such documents."  Accordingly, the Court's order provides that "there will be no waiver of privilege" for materials disclosed during discovery, and a party may assert the privilege "at any time."  (Dkt. No. 31 ¶ 19.)

Because Levi and Conley chose to pursue overlapping discovery from many custodians in multiple different fora (*e.g.*, probate court, public records requests, two different federal court cases), similar documents appear in multiple locations in State Defendants' document collection. In the context of this large, overlapping review universe, there is nothing nefarious about the fact that similar documents appear in multiple places in State Defendants' document production. There is also nothing nefarious about the fact that State Defendants produced five documents with appropriate redactions, while errantly producing the same or similar documents elsewhere in the production with slightly different or no redactions.

This Court anticipated that the parties may "disclose[] privileged information" during discovery and then claw back that same information upon learning of the disclosure.  (Dkt. No. 31 ¶ 19.)  After receiving plaintiff's motion, State Defendants "assert[ed] the privilege" as contemplated by the protective order and confirmed the appropriate scope of redactions across applicable versions of all five documents.  The parties could have resolved the discrepancy in redactions for these documents without involving the Court if plaintiff had simply conferred with State Defendants before filing this motion and told State Defendants about these inconsistent redactions, as they had an ethical obligation to do.  ORPC 4.4(b).[13]

---

[13] Plaintiff filed her exhibits with this Court under seal.  Thus, no further action is needed by this Court to prevent the public dissemination of State Defendants' privileged materials.

Plaintiff also argues that State Defendants are using attorney-client privilege designations to withhold unprivileged factual information that is "clearly favorable" to plaintiff. Plaintiff's accusation is inaccurate. Plaintiff only discusses a *single* email in lodging this accusation and misstates the record with respect to that one document. Exhibit 8 to the Tshala declaration is a communication between an ODHS employee and an attorney about a "Team meeting" that occurred in January 2019. (Tshala Decl. Ex. 8.) State Defendants correctly redacted the privileged discussion between the ODOJ attorney and ODHS client regarding the team meeting. But State Defendants *did not* assert that "notes" from the team meeting were privileged. State Defendants produced the full, detailed notes taken at the team meeting elsewhere in the record. (Hoffman Decl. Ex. 1.) In arguing otherwise, plaintiff misstates the record. (Mot. to Compel at 9 (stating that State Defendants withheld the notes from the January 2019 meeting).)

More fundamentally, it is black-letter law that attorney-client privilege only protects privileged communications, not the "underlying facts" disclosed to the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). In the Litigation Exhibits, State Defendants' redactions are generally quite narrow and merely redact a line or two of privileged information contained in a broader, non-privileged discussion. (*See, e.g*., Tshala Decl. Ex. 5 at 1; Ex. 7 at 8-9.) Contrary to plaintiff's assertions, there is nothing "inconsistent, selective, and misleading" about these redactions. Nor are State Defendants asserting privilege over factual information, as distinct from legal advice and attorney work product. State Defendants correctly produced non-privileged factual information while simultaneously redacting privileged communications about those same facts. Plaintiff's arguments to the contrary rest on plaintiff's fundamental misunderstanding of privilege law.

III.    **A subject matter waiver is not warranted because many of the documents identified by plaintiff were not covered by the attorney-client privilege.**

Plaintiff's motion also fails because the documents identified by plaintiff often do not contain attorney-client privileged information.  The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice.  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).  The hallmark of attorney-client privilege is a discussion of legal advice.  Where a non-attorney merely copies an attorney on factual information sent to a large distribution list without requesting or receiving legal advice, the communication is not privileged.  *See*, *e.g.*, *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1075 (N.D. Cal. 2002) ("The mere fact that outside counsel was copied with the e-mail will not shield communications not made for the purpose of securing legal advice.").  Here, although ODOJ attorneys are often copied on the emails in question, the ODHS sender does not request and the ODOJ attorney does not provide legal advice.  For example, plaintiff cites a June 2017 email exchange between several different ODHS caseworkers in which the caseworkers discuss their efforts to interview Joseph Raygosa regarding Z.C. running away from the house.  Although an ODOJ attorney is copied on the email chain, the DOJ attorney is not asked any questions and never responds to the chain.  (Tshala Decl. Ex. 4 at 3.)  This communication is not attorney-client privileged or work product and thus is not the basis for any waiver.

Further, some of the communications are, at most, attorney work product.  The work product doctrine protects documents and tangible things prepared by a party or their representative in anticipation of litigation.  *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011).  FRE 502(c) provides that where, as here, a disclosure occurs in a state proceeding, the disclosure does not operate as a waiver if the disclosure "would not be a waiver under this rule if

it had been made in a federal proceeding" or "is not a waiver under the law of the state where the

disclosure occurred." OEC 511, unlike FRE 502, does not provide for subject matter waiver of

work product. Thus, unlike disclosure of attorney-client privileged documents, disclosure of

work product documents does not waive work product protection for all other documents on the

same subject under Oregon law. *Meyer v. State by & through Oregon Lottery*, 292 Or. App. 647,

664, 426 P.3d 89, 672–73 (2018). Regardless, even under federal law a "subject matter" waiver

of work product waiver usually only extends to the "factual, or non-opinion, work product" at

issue in the disclosure; opinion work product is discoverable only where "specifically at issue"

and "critical" to the case. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1125 (9th Cir. 2020).

From July 2016 to October 2019, ODHS was a party to the juvenile dependency

proceeding involving J.C. and Z.C.'s biological parents. ODOJ attorneys represented ODHS in

that juvenile dependency proceeding. To the extent ODHS officials prepared factual information

for their attorneys in the juvenile dependency proceeding, the communication was protected

work product. For example, in one exchange, an ODOJ attorney asks for a summary of J.C.'s

recent forensic interview regarding her abuse to prepare for the juvenile dependency

proceedings. (Tshala Decl. Ex. 4 at 16.) An ODHS employee then provides that summary. (*Id.*

at 15.) This compilation of factual information at the direction of an attorney during the

pendency of litigation is protected work product.

Disclosure of attorney work product in a state court proceeding does not result in a

subject matter waiver. *Meyer v. State by & through Oregon Lottery*, 292 Or. App. 647, 664, 426

P.3d 89, 672–73 (2018); FRE 502(c); *see also United States v. Sanmina Corp.*, 968 F.3d 1107,

1125 (9th Cir. 2020) (holding that work product waiver only extended to "underlying facts and

data" relied on by attorneys, not the attorneys' opinions). Thus, even if State Defendants

disclosed work product documents to Levi in response to the probate court subpoena, State Defendants have not impliedly waived protection of other documents regarding the same subject matter.  Because many of the documents identified by plaintiff are not subject to any privilege and many others are work product, this Court should not compel the disclosure of other privileged materials.

## IV.    Plaintiff's description of the "subject matter" at issue in the disclosed communications is far too broad.

Plaintiff has identified at most five emails containing attorney-client privileged information that ODHS disclosed in the probate matter.  If this Court reaches the issue, it should hold that this prior disclosure only justifies a narrow subject matter waiver.  The waiver of the attorney-client privilege constitutes waiver only as to communications about the matter actually disclosed.  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).  Here, the disclosed documents only reveal privileged communications regarding the following subject matter:

- Legal advice regarding the Duncan-Raygosa home's certification status during the pendency of the home's 2018 appeal of the revocation.

- The November 2018 drafting of a formal notice of revocation to the Duncan-Raygosa home.

- Legal advice regarding the Duncan-Raygosa home's July 2017 offer to voluntarily terminate their certification.

- Legal advice in July 2017 regarding the facts necessary to support a "founded" disposition for abuse or neglect for the Duncan-Raygosa home due to Z.C. running away from the home.

**STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL UNDER FRE 502(a)**

By contrast, plaintiff demands a broad waiver effectively covering the legal aspects of Z.C. and J.C.'s entire child protection and child welfare history. For instance, plaintiff insists that State Defendants have waived privilege with respect to any privileged communication regarding ODHS's "efforts" to achieve J.C. and Z.C.'s permanency goals, which is the underlying legal purpose of a dependency proceeding and all associated services to the family, as well as "home safety concerns" regarding the Duncan-Raygosa home, and "concern of discipline in the Spicer home." (Tshala Ex. 1.) In addition, plaintiff asserts a waiver as to "subjects" such as "O'Brien's bias" that exist solely in plaintiff's case theory and allegations and cannot be accurately tied to any subject on which ODHS might seek or receive legal advice.

Plaintiff appears to regard an error in another proceeding as an opportunity to play "gotcha" with a fundamental aspect of the attorney-client relationship. The specific, narrow legal advice inadvertently disclosed in the probate court subpoena does not justify the broad waiver plaintiff now demands. For instance, just because an ODOJ attorney assisted in drafting a notice of revocation to the Duncan-Raygosa home, it does not follow that State Defendants waived privilege regarding communications about any "concerns" about the Duncan-Raygosa home at any time. Plaintiff never explains how the inadvertent disclosure of a handful of narrowly-focused documents could justify a waiver for the broad swaths of privileged information described in her motion. Indeed, plaintiff never discusses the contents of the documents disclosed in the probate matter at all. Because the disclosed documents discussed legal advice regarding discrete issues, any subject matter waiver should be tailored to the matters "actually disclosed" in the documents. *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) ("The breadth of the waiver finding, untethered to the subject matter disclosed, constitutes a particularly injurious privilege ruling.").

**V.      The Skjelset declaration does not justify any broader subject matter waiver.**

Plaintiff's motion attaches a declaration by Levi's counsel, Mary Skjelset.  Paragraphs 38 to 58 of the Skjelset declaration raise various complaints regarding privilege designations in the *Levi* matter.  Plaintiff's motion limits discussion of Ms. Skjelset's complaints to a conclusory footnote.  (Mot. to Compel at 8 n. 3.)  Plaintiff does not attempt to connect the dots between Ms. Skjelset's complaints and the probate subpoena documents at issue in the motion to compel.  Further, plaintiff's counsel did not confer regarding the documents attached to Ms. Skjelset's declaration prior to filing this motion to compel.  Plaintiff's insufficient presentation of these issues and failure to comply with Local Rule 7-1 are reason alone for disregarding *Levi* plaintiff's attempt to introduce her own issue into the *Conley* motion.  Regardless, Ms. Skjelset's accusations are misguided.  Producing material that is not privileged and withholding privileged communication is not "inconsistency" or impropriety entitling a party to undermine privilege across the board.  It is simply the application of a basic principle of law.

The Skjelset declaration discusses three unrelated groupings of documents that Ms. Skjelset asserts are proof State Defendants are "improperly withhold[ing]" privileged communications.  (Skjelset Decl. ¶¶ 37-58.)  Ms. Skjelset attaches various compilation exhibits of her own creation to the declaration.  (Skjelset Decl. Exs. 8-13.)

First, Ms. Skjelset cites three discussions between non-attorney state employees that contain narrow redactions.  (Skjelset Decl. ¶¶ 50-58.)  Ms. Skjelset then asserts that because no attorney was on the communication, the communication is not privileged.  Ms. Skjelset is mistaken.  Client employees can discuss legal advice (or requests for legal advice) with each other, outside the presence of attorneys, without breaking privilege.  *See*, *e.g.*, *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (holding that privilege extends to "communication[s] between nonlegal employees in which the employees discuss or

transmit legal advice given by counsel"). Nor is there anything "random and inexplicable" about State Defendants redacting privileged information contained in broader non-privileged discussions.

Second, Ms. Skjelset observes that State Defendants redacted two communications between ODHS's attorneys during the dependency proceedings and J.C.'s mental health provider during those same proceedings. (Skjelset Decl. ¶ 48.) But as shown, facts and opinions gathered by ODOJ attorneys for the dependency proceedings were work product. Further, as plaintiff's own case law explains, work product is only waived when provided to an *adversary*, not a third party. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020). Again, plaintiff has never requested that State Defendants remove these redactions, so it is unclear what relevance these communications have to plaintiff's motion.

Finally, Ms. Skjelset observes that in November 2018, while interacting with a former ODHS employee, Stephen Hammond revealed the substance of specific attorney-client communications pertaining to Ms. O'Brien's involvement in the dependency proceeding. Ms. Skjelset is correct about this and as her own exhibits show, State Defendants have already produced the disclosed emails in full. (Skjelset Ex. 8.) Ms. Skjelset insists that State Defendants must now also produce *any* privileged communications pertaining to Ms. O'Brien's "permanency casework" at any time because O'Brien was a "bias[ed]" caseworker. (Skjelset Decl. ¶¶ 42-43.) For instance, Ms. Skjelset demands disclosure of a privileged communication from six months earlier on a different topic. (Skjelset Ex. 8 at 16-17.) As shown, Ninth Circuit case law does not permit this type of blanket disclosure "untethered" from the subject matter of the communications. *See*, *e.g.*, *Hernandez*, 604 F.3d at 1101. Regardless, Mr. Hammond's

disclosure of work product did not occur as part of this litigation, or even as part of a disclosure

by ODHS.  Thus, there was no unfair disclosure by State Defendants in this litigation.

### CONCLUSION

The Court should deny plaintiff's motion to compel.


DATED: August 27, 2024.                ELLEN F. ROSENBLUM
                                       ATTORNEY GENERAL
                                       FOR THE STATE OF OREGON


                                       *s/ Harry B. Wilson*
                                       Lauren F. Blaesing, OSB #113305
                                       LaurenBlaesing@MarkowitzHerbold.com
                                       Harry B. Wilson, OSB #077214
                                       HarryWilson@MarkowitzHerbold.com
                                       Alexandra L. Rhee, OSB #230770
                                       AlexRhee@MarkowitzHerbold.com
                                       *Special Assistant Attorneys General for State*
                                       *Defendants*

                                       Chad A. Naso, OSB #150310
                                       ChadNaso@MarkowitzHerbold.com
                                       Hannah K. Hoffman, OSB #183641
                                       HannahHoffman@MarkowitzHerbold.com
                                       Jeffrey M. Edelson, OSB #880407
                                       JeffEdelson@MarkowitzHerbold.com
                                       *Of Attorneys for State Defendants*

2187269.4